# THOMAS *v.* STATE

[No. 48, October Term, 1954.]

*Decided December 16, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James R. Miller*, with whom was *Lee C. Miller* on the brief, for the appellant.

*James H. Norris, Jr., Assistant Attorney General*, with whom were *Edward D. E. Rollins, Attorney General*, and *Walter W. Dawson, State's Attorney for Montgomery County*, on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a conviction for manslaughter by automobile under Code (1951), Article 27, Section 455, from the Circuit Court for Montgomery County.

Appellant was charged with manslaughter by automobile of one of two children killed by him when the truck he was driving struck them. He was tried in the Trial Magistrate's Court for Montgomery County and found not guilty. The State then appealed from this verdict to the Circuit Court for Montgomery County. Upon the death of the second child appellant was indicted for manslaughter by automobile and both cases were consolidated for trial. At the trial, the Court sitting without a jury, the appellant was found guilty and convicted in both cases.

The pertinent portion of the Code (1951), Article 27, Section 455, provides: "Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle * * * in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile' * * *." This statute has been interpreted to have the common law meaning of gross negligence so that, in order to establish guilt, there must be a "wanton or reckless disregard for human life." Simple negligence is not sufficient to warrant a conviction of manslaughter by automobile. *Hughes v. State*, 198 Md. 424, 432, 84 A. 2d 419, 422. See also,

*Allison v. State,* 203 Md. 1, 5, 98 A. 2d 273, 275; *Duren v. State,* 203 Md. 584, 588, 102 A. 2d 277, 279; and *State of Maryland v. Chapman,* 101 F. Supp. 335, 341.

The issue here is essentially factual. Under Rule 7(c) of the Criminal Rules of Practice and Procedure the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and is not to be set aside merely because, on the record, this Court might or would have arrived at a different conclusion from that of the trial court. *Lambert v. State,* 196 Md. 57, 68, 75 A. 2d 327, 332; *Edwards v. State,* 198 Md. 132, 151, 81 A. 2d 631, 639; *Hughes v. State,* 198 Md. 424, 425, 84 A. 2d 419; *Stokes v. State,* 202 Md. 166, 171, 95 A. 2d 871, 873. The appellant contends that the evidence is insufficient in law to sustain the conviction and hence that the verdict of the trial court is clearly erroneous.

There is no substantial conflict in the evidence presented in this case. Appellant, nineteen years of age, was employed as a beer truck driver by the Division of Liquor Control of Montgomery County. On December 7, 1953, he and his regular helper, James V. Hoover, reported for work at the County Beer Warehouse near Silver Spring at 8:00 A.M., loaded their truck, and began to make scheduled deliveries in the northern part of Montgomery County. In Gaithersburg, they were joined and accompanied throughout the remainder of the day, by James R. Lyons, an employee of a private carrier who made deliveries of beer from Baltimore to the County Beer Warehouse. It was stipulated at the trial that during the course of the day appellant had consumed six bottles of beer, four of which were consumed between 10:30 A.M. and early afternoon, and two of which were consumed just a few minutes before the occurrence of the accident at approximately 3:30 P.M. The appellant was driving a large, new, van type International truck that had been driven some 7000 miles. Approximately two and one-half weeks prior to the accident, the truck was taken to the garage for repairs to the brake mechanism. Montgomery County paid a

bill. for these repairs in which a charge was made for one-half pint of brake fluid. Shortly after this appellant complained to his superior at the Beer Division that the brakes were still not functioning properly and that sometimes they would take hold properly and that sometimes they would take hold quickly and grab. His superior told him to take the truck in for further repairs to the brakes when the truck could be spared.

Shortly after 3:30 P.M. on the day of the accident, appellant, his helper and Lyons left their last delivery stop at the Country Store and with the truck about half-full of empty cases of bottles proceeded south on U. S. route 240 to the Garrett Park Road. At Garrett Park Road appellant intended to turn left, so. he stopped to yield the right of way to approaching traffic. He then turned into Garrett Park toward Kensington on his usual return route to the County Beer Warehouse. The State's witness Hoover testified that at this time appellant was traveling at approximately thirty miles an hour. Further testimony showed that after appellant had traveled approximately three-quarters of a mile he approached the Garrett Park Elementary School crossing and shifted from high gear to a lower gear which reduced his speed to approximately twenty miles an hour. The State's witness Hopkins who had entered Garrett Park Road behind appellant similarly slowed down. After passing the school crossing appellant shifted back into high gear and increased his speed to approximately thirty or possibly thirty-five miles an hour. Appellant was going at about this rate of speed as he approached the top of Garrett Park Hill, which leads down steeply for 500 or 600 feet to a bridge over Rock Creek. The speed limit is thirty miles per hour. The road over the crest of the hill makes a sharp turn to the right. It was testified by the State's witnesses that appellant approached the top of the hill on the right side of the road operating in a normal manner. Appellant took his foot off the accelerator and when he "got to the curve" he "touched the brake." He and his companions said

that the truck then "dashed" or "darted" to the left. Hopkins, who was behind appellant, testified that the truck was operating normally until it reached the curve, when the truck swayed as if a tire had been blown out or the load had shifted and then went off the road on the left side, where there was a five or six inch drop between the concrete shoulder and the dirt alongside. Appellant then cut his wheels to the right and the truck swung back on the paved portion of the road, but swung so far that its right wheels then went off the pavement on the right side of the road, where there is also some drop between the pavement and the dirt. The truck thereupon then leaned so sharply to the right that its top rear portion struck a utility pole, and the truck side-swipped guard rails on the side of the highway. Appellant stated that during these swings and up to this point he had not applied the brakes, as he was afraid it would upset the truck. After striking the pole the appellant managed to get the truck sufficiently back on its course so that it was following the curvature of the road toward the bridge with the left wheels on the pavement and the right wheels on the dirt. Appellant did not have any view of the bridge until he struck the pole; it was then that he noticed two boys on the bridge in the right lane of traffic. To avoid striking them, he thereupon turned the truck to the left with the intention of crashing into the wall on the left side of the bridge. Simultaneously, however, the children ran to that side of the bridge and thus directly into what became the path of the oncoming truck, since it was deflected somewhat to the right and back into the roadway by the curbing at the left side of the bridge. The truck then proceeded about 100 feet further, out of control, and overturned. Both children died as a result of their injuries.

Shortly after the accident, at about 4:00 P.M., Sergeant Day of the Montgomery County detective force arrived at the scene. He and appellant entered the police cruiser and Sergeant Day questioned appellant in regard to the

accident. The Sergeant testified that he noticed alcohol on appellant's breath and he asked him how much he had to drink. Appellant replied that he had consumed two beers. Later at the Suburban Hospital Officer Hutchins and Officer Belt questioned appellant regarding the accident. Officer Hutchins also asked if he had been drinking and appellant replied that he had two or three beers. Mrs. Gulley and Mr. Crouse, who knew the appellant very well, and who were both at the scene of the accident shortly after it occurred and had the opportunity to observe him, testified that he was not under the influence of alcohol. None of the officers who questioned the appellant requested him to submit to a sobriety test at the hospital, nor did they see fit to charge him with operating a motor vehicle while under the influence of alcohol.

The State introduced the testimony of Mr. Stevens, maintenance supervisor for automobiles for Montgomery County Police Department, who had examined the truck's brake system after the accident. Cross-examination of this witness revealed that he had only checked the front wheels for outward leaks and that he had not checked the rear wheels at all. Further, he stated that he had no experience with International trucks, such as the one in question. It was admitted also that the addition of brake fluid to a truck which had only been operated 7000 miles was unusual and could indicate defects in the brake system.

This rather full review of the evidence shows that there were only three factors from which gross negligence might be deduced: (1) excessive speed; (2) defective brakes; and (3) intoxication. As we understand the observations of the learned trial judge at the conclusion of the testimony, he based his finding of gross negligence on the last ground.

As to excessive speed, the evidence is not clear that the speed limit was being exceeded at all as the truck reached the top of the hill and curve leading to the scene of the fatalities. If it was exceeded, it was not greatly

exceeded, and there seems to be no contradiction of the testimony showing that the appellant was driving the truck over a familiar route and at his usual speed and that he had previously encountered no difficulty while doing so. Though the comments of the learned trial judge at the conclusion of the testimony indicate that he considered the speed at that point greater than it should have been and, we infer, negligent, he did not, as we read his comments, find it such as to indicate gross negligence. Neither do we.

The argument of the State in the trial court with regard to the brakes appears to have been the opposite of that presented in this Court. The appellant contended below that the brakes were defective; the State seems to have contended there that they were not defective and hence (presumably) that the appellant could have stopped the truck by applying them. In this Court, the State seeks to establish negligence on the part of the appellant because he continued to operate the truck despite his knowledge that the brakes were defective. The trial court took the view that although the brakes might grab, they would hold, and the appellant could have stopped. Even if the contention made by the State in this Court is open to it, we think the evidence is insufficient to support a charge of gross negligence against the appellant. He duly and promptly reported the unsatisfactory condition of the brakes to his superior after they had supposedly been repaired, and he was ordered to go on using the truck until it could be spared for further repairs. The defects in the brakes do not appear to have been so great or of such a nature as to indicate that the continued operation of the truck would amount to "wanton or reckless disregard for human life."

Intoxication is the ground upon which the trial judge found the appellant guilty of gross negligence. In making this finding, he obviously considered insufficient the direct and uncontradicted evidence of the exercise by the appellant of care in driving just a few minutes before the fatal accident both in making a left turn off a major

road and in slowing down to a plainly cautious speed on approaching a school crossing. The only evidence relating in any way to intoxication was the fact that in a period of about five and a half hours the appellant had consumed six bottles of beer, two of them shortly before the accident, and the further fact that one of the police officers had noticed alcohol on his breath. Not one witness testified that he appeared to be intoxicated, the police made no tests to determine whether or not he was at all under the influence of alcohol and no such charge was made in the proceedings before the Trial Magistrate. We cannot regard the absence of such a charge as without significance where, as in this case, the police were on the scene very shortly after the accident and interviewed the driver and had ample opportunity to observe his actions and demeanor. No testimony at all, either general or specific, was offered to show what the intoxicating effect of six bottles of beer consumed over the time here involved would be. (For a discussion of such tests, see *The Compulsory Use of Chemical Tests for Alcoholic Intoxication—A Symposium.* 14 *Md. Law Rev.* 111.) We think that the testimony as to how the defendant was driving just before reaching the top of the hill and the curve down to the bridge, as to the erratic operation of the brakes, as to the appellant's efforts to regain safe control of the truck after its unexpected apparent reaction to a touch of the brakes, and as to his reasons therefor, and as to his last desperate effort to avoid running into the boys by trying to run the truck into the bridge wall also tend to negative a belief that he was intoxicated.

In this case, since there was no real dispute as to the facts, the credibility of witnesses, which can, of course, be better judged by the trial court which sees and hears them, is hardly involved. In these circumstances we have less hesitation in drawing a conclusion from the facts at variance with that of the trial judge. In our opinion, the evidence with regard to intoxication was not sufficient to warrant a finding that the appellant was guilty of

58

gross negligence within the established meaning of the statute in operating the truck at the time of the occurrence of the tragic accident, which gives rise to these cases. Accordingly, the judgment in each case will be reversed and the cases will be remanded. The remand will not preclude a new trial, if the State elects to retry the charges.

*Judgments reversed and remanded, the costs of this appeal to be paid by the County Commissioners of Montgomery County.*