## JOHNSON *v.* STATE

[No. 171, October Term, 1956.]

528

*Decided June 6, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Mark A. Singerman,* with whom were *Douglas N. Sharretts, Paul Berman, Sigmund Levin* and *Theodore B. Berman* on the brief, for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Norman Polski, Assistant State's Attorney,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by William Henry Johnson, appellant-defendant, from his conviction and sentence in the Criminal Court of Baltimore on the charge of manslaughter by automobile of one Junior Betson.

The case arose out of an accident that occurred on Sunday, March 4, 1956, at about 1:50 A. M. on William Street, which is a one-way four-lane northbound highway leading from Key Highway into an extension of Calvert Street, in the City of Baltimore. Going from Key Highway towards Calvert Street there is first a sharp, right angle curve north onto William Street. Just around the curve on William Street there is a down grade to a hollow where railroad switching tracks cross the street at a right angle, and just north of them William Street is intersected by York Street, a one-way eastbound street running parallel with the railroad tracks. About 150 feet beyond the north side of the York Street intersection William Street makes a sharp turn (almost a right angle turn) to the west. A curb runs along the northeasterly side of William Street as it curves northwesterly towards its junction with the Calvert Street extension. The automobile, operated by the defendant, first struck this curb at a point not far from the point where a line drawn straight north along the middle of William Street from the York Street intersection would meet the curb. It then sideswiped a nearby light pole northwest of this point, damaging the right-hand door of the car, and wound up in a grass plot probably somewhat more than 600 feet southwest from the light pole. In some manner the deceased, who was a passenger riding on the right

hand side of the front seat, was thrown from the automobile and was found lying in the roadway 66 feet west of the light pole. He sustained severe injuries in the accident and died a week later as a result thereof.

Miss Wanda Mentzel, a witness for the State, testified that she was driving her automobile north on William Street in the extreme left lane, at about 15 miles an hour, when, as she started to cross York Street north of the curve from Key Highway, she heard wheels squealing. She looked into her rear view mirror and saw a car, which was in the extreme right lane, approaching. It passed her and she stopped her automobile. She estimated that the car was traveling at a speed of about 60 miles per hour at the time it struck the light pole. At an earlier preliminary hearing of this case at the Central District Magistrate's Court, Miss Mentzel also stated that the speed of the defendant's automobile was 60 miles per hour, but on cross-examination in response to a question as to how she arrived at this estimate of speed she replied, "I don't know how fast he was going, I just said that."

The defendant testified that prior to the accident he and Betson had been at an establishment in Brooklyn, Maryland, listening to modern music; that while there he had consumed two bottles of beer from five o'clock Saturday afternoon until he left; that he was driving Betson home when the accident took place; that he had no difficulty in negotiating the right angle curve from Key Highway onto William Street; that he estimated his speed at 35 miles per hour; that he lost control of his car when he ran over the bump caused by the railroad tracks which cross William Street; that his next recollection was when the automobile came to rest on the grass plot.

The testimony of the investigating police officer who appeared as a witness was that he and his colleague arrived at the scene soon after the accident had occurred; the defendant stayed at the scene and identified himself; that he had an odor of alcohol on his breath but his condition was normal, with just the usual nervousness which follows this type of accident; that there was no charge of driving under the influence of alcohol; that the defendant made a statement that he had been struck by another vehicle from the rear. At the

trial, the defendant admitted that this statement was not correct. His explanation was that he believed at the time that he had been struck by another car because his automobile made loud scraping and banging noises when it passed over the bump at the railroad tracks which cross William Street.

The trial judge, sitting without a jury, found the defendant guilty of manslaughter because his automobile was going at an excessive rate of speed and the defendant was therefore unable to control it. The controlling question presented is, whether or not on the evidence submitted, the trial court was clearly in error in finding the defendant guilty of the offense charged. Rule 741 c of the Maryland Rules; *Basoff v. State,* 208 Md. 643, 119 A. 2d 917. On the facts of this case, the answer to that question depends upon whether or not, in the circumstances existing at the time and place of the accident, the defendant was operating the automobile at such an excessive rate of speed as to constitute gross negligence within the meaning of Code (1951), Article 27, Section 455. That Section provides in part:

> "Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, * * * in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile * * *'."

Since the enactment of the above section in 1941 (Laws of 1941, Ch. 414) this Court has passed upon it in the following cases: *Hughes v. State,* 198 Md. 424, 84 A. 2d 419; *Duren v. State,* 203 Md. 584, 102 A. 2d 277; *Thomas v. State,* 206 Md. 49, 109 A. 2d 909; *Clay v. State,* 211 Md. 577, 128 A. 2d 634; *Lilly v. State.* 212 Md. 436, 129 A. 2d 839. These cases have uniformly recognized that in order to constitute gross negligence, the conduct of the defendant must be such as to amount to a wanton or reckless disregard for human life or for the rights of others.

In the instant case, the evidence of speed as to the defendant is not very clear. Miss Mentzel's estimate of 60 miles per hour was badly weakened by her testimony on cross-examination at the preliminary hearing before a magistrate,

which was read to her during the trial in the Criminal Court. The defendant estimated his own speed at 35 miles per hour. If the question were solely one of credibility of witnesses, we should be very hesitant to arrive at a conclusion contrary to that of the trial judge. In addition to the weakness in Miss Mentzel's testimony abovementioned, there also seem to be weaknesses on the defendant's side, both in his claim that he knows nothing of what happened after he hit the bump at the railroad tracks and in his explanation of why he first told the police that another car had struck his. However, any such weaknesses or doubts about the defendant's account of what happened cannot supply a lack of affirmative proof in the State's case, nor do they have any effect upon the significant and undisputed facts that the defendant successfully negotiated the sharp turn to his right from Key Highway into William Street, and that he stayed in the right hand lane of William Street. These physical facts seem to us to indicate that his speed could not have approached 60 miles an hour when he passed the Mentzel car. It is difficult to believe that he would not have been wrecked at the first turn or that he could have gotten into the right hand lane on William Street if he had been traveling at any such speed. There is no testimony that he speeded up after turning into William Street, and he had little distance in which to do so before the accident happened. His speed may well have been such as to establish ordinary negligence for which he would be liable in a civil suit, but that is not the test under our manslaughter statute, which imposes a penalty only for gross negligence.

In the *Lilly* case this Court quoted from the *Duren* case at page 443 of 212 Md.: "It is plain that the environment in which speed is indulged must determine whether it does or does not show gross negligence at a given time. Speed in the open country on a four lane highway may be very high and not constitute negligence. A much lower rate of speed in a city street may constitute gross negligence. This, too, was the law long before automobiles existed. * * * Obviously, what must be looked for in each case is whether, by reason of the speed in the environment, there was a lessening of the

control of the vehicle to the point where such lack of effective
control is likely at any moment to bring harm to another.
Cf. *Darienzo Trucking Corp. v. Sullivan,* 202 Md. 32, 39-40,
95 A. 2d 293, 296. If there is found such lack of control,
whether by reason of speed or otherwise, in a place and at a
time when there is constant potentiality of injury as a result,
there can be found a wanton and reckless disregard of the
rights and lives of others and so, criminal indifference to
consequences." To this we added that "Judge Henderson in
the dissenting opinion in that [the *Duren*] case agreed that
speed must be weighed in the light of the surrounding cir-
cumstances."

An examination of the environment in the present case
shows that the defendant was traveling on a one-way, four-
lane, through highway; that the time was in the early morn-
ing hours of a Sunday; that the traffic was very light; that
the general area is devoted to commercial and industrial use,
with no houses in the vicinity. The place where the accident
occurred is not the congested, populous residential or business
area that was involved in the *Duren* case or the *Clay* case,
nor was there any disregard of both a stop sign and other
traffic, as in the *Lilly* case.

In the *Duren* case this Court cited with approval the de-
cision of the Court of Appeals of New York in *People v.
Angelo,* 159 N. E. 394, which thoroughly discussed a man-
slaughter by automobile statute similar to that of Maryland
and its effect on the interpretation of the common law under-
standing of negligence which amounts to crime. A like result
was reached in the more recent case in New York of *People
v. Gardner,* 255 App. Div. 683, 8 N. Y. S. 2d 917. In that
case an automobile traveling 60 to 65 miles per hour ran into
a culvert and a passenger was killed. A conviction of man-
slaughter based solely on excessive speed was reversed. The
court said in part, "The test is not satisfied by proof of ex-
cessive speed amounting to negligence but by proof of speed
of that character—if such was the case—and other circum-
stances which, as we have seen, together must show a reckless
disregard by the accused of the consequences of his conduct
and his indifference to the rights of others."

The speed that was indulged in, at the time and in the place, in the case at bar is not such that amounts to criminal indifference to consequences. In the environment of the instant case, the evidence is not, in our estimation, sufficient to warrant a finding of guilt, beyond a reasonable doubt, of conduct on the part of the defendant amounting to a wanton or reckless disregard of the rights and lives of others. We are accordingly of the view that the conviction must be reversed.

> *Judgment reversed, costs to be paid by the Mayor and City Council of Baltimore.*