WASILESKI *v.* STATE

[No. 82, September Term, 1965.]

*Decided February 7, 1966.*

The cause was submitted on the brief to PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

Submitted by *Edward J. Ryan* for appellant.

Submitted by *Thomas B. Finan, Attorney General, Robert F. Sweeney, Assistant Attorney General,* and *Donald W. Mason, State's Attorney for Allegany County,* for appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from a conviction of the appellant, John Wasileski, of manslaughter by automobile under Code (1957), Article 27, Section 388, by a trial judge in the Circuit Court for Allegany County, sitting without a jury. The appellant's sole contention is that there was insufficient evidence to show that the accused was operating his automobile in such a manner as to amount to "a wanton or reckless disregard for human life," the applicable test set out in the cases construing the statutory phrase "in a grossly negligent manner." See *Abe v. State,* 230 Md. 439, 440, 187 A. 2d 467; *Johnson v. State,* 213 Md. 527, 531, 132 A. 2d 853; *Lilly v. State,* 212 Md. 436, 442, 129 A. 2d 839; *Clay v. State,* 211 Md. 577, 584, 128 A. 2d 634; *Duren v. State,* 203 Md. 584, 588, 102 A. 2d 277; *cf. Pierce v. State,* 227 Md. 221, 226, 175 A. 2d 743. "Our function in reviewing the determination of such a question of fact by a trial judge is to decide whether or not the evidence, and proper inferences therefrom, were sufficient to warrant that judge in reaching the conclusion that the defendant was guilty beyond a reasonable doubt." *Stokes v. State,* 220 Md. 471, 472, 154 A. 2d 714.

On July 10, 1964, at approximately 5:30 in the afternoon, a car which was being operated by the appellant Wasileski, was involved in a three car collision on U. S. Route 40 three miles east of Cumberland, Maryland. The two other cars involved were operated by Alton Fortney, who was accompanied by his wife, and by John Henry Fuchluger, with whom were his wife and their three children. At the trial there was evidence to show that the Fortney and Fuchluger cars were proceeding in an easterly direction on the right hand side of the two-laned Route 40, and the Wasileski car was headed in a westerly direction but more than half way over on the left (wrong) side of the highway, when it sideswiped the Fortney vehicle forcing it into a guardrail. The car operated by Wasileski then crashed into the oncoming Fuchluger car, killing one of its

passengers, Mrs. Thelma Fuchluger. The evidence adduced below further showed that: the portion of the road on which the accident occurred was wet at the time of the accident, the contour of the road was level, one going in a westerly direction on Route 40 (such as the defendant-appellant) would observe that the road narrows from a four-lane to a two-lane highway some 276 feet before the place where the Fortney car was struck, approaching the point where the road narrows there was a series of clearly visible signs along the side of the road which warned that the divided highway ended ahead as well as painted "hash markings" on the road which indicated that the road narrowed.

At 1:30 p.m. on the day of the accident, the appellant picked up his girl friend, Phyllis Wolford, at her home in Waynesboro, Pennsylvania, and they then proceeded to drive aimlessly for about two and one-half hours, finally stopping at the Log Cabin Inn, which is located ten miles east of Hancock, Maryland, and some fifty miles east of the accident scene. Some time after 4:00 p.m., the couple left the Inn, Wasileski having purchased a six-pack of beer. At the trial, Miss Wolford testified that the defendant then started to drink the recently purchased beer as he drove the car, and that she asked him to discontinue the drinking because "he was starting to stare" and she thought he was getting drunk. About one hour before the accident, and presumably some time after leaving the Log Cabin Inn, Miss Wolford further testified, that she asked the appellant to stop speeding and informed him that he was driving on the wrong side of the road. As to the actual collision, her testimony was that she did not know what caused the accident but recalled that "I seen this car coming out of this intersection and I told him we were going to fool around and have an accident and he said 'No,' and just about that time we hit and from then on I don't remember what happened."

The appellant Wasileski did not take the stand to testify at his trial, but a statement given by him to Mr. Baker, an investigator for the State's Attorney's office, on the day following the accident, was introduced into evidence without objection. In that statement, the appellant admitted that he started drinking beer at 8:20 a.m. on the day of the accident, and that

he drank three beers before he picked up Miss Wolford at 1:30 in the afternoon. He stated that he might have gotten some more beer before he stopped at the Log Cabin Inn, he could not remember, but he could remember purchasing a six-pack of beer there and drinking three cans of beer as he drove toward Cumberland. However, he stated that he could recall nothing about how the accident had happened because shortly after leaving the Log Cabin Inn he "blacked out." The last thing which he could remember was being in the right hand lane of traffic leaving Hancock, Maryland (roughly 40 miles from the accident scene). When asked by the investigating officer to explain why he "blacked out" he stated: "I don't know. It could have been because I was nervous and worried about my wife and the combination of drinking the beer after leaving the Log Cabin."

Following the accident, Wasileski was taken to Sacred Heart Hospital in Cumberland, where an alcohol blood sample was taken from him, with his consent, approximately one and a half hours after the accident. The test showed that the appellant's blood had an alcohol content of 0.11.[1] Robert L. Rosser, a police officer at the hospital, testified that he could detect an odor of alcohol about Wasileski and that while at the hospital he "wasn't very cooperative and kept arising from his chair and flexing himself like he wanted to square off to fight, * * *." State Policeman Thomas Ruppert, who investigated the accident, testified that in or near Wasileski's car at the scene of

---

1. Code (1965 Replacement Vol.), Art. 35, § 100 (a) states in regard to prosecution for violation of any Maryland statute concerning driving while under the influence of alcohol that: "2. If there was at that time in his blood more than five one-hundredths of one percentum (0.05%), but less than fifteen one-hundredths of one percentum (0.15%), by weight, of alcohol, as determined by an analysis of his blood or breath, * * * such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant; * * *." Paragraph 3 of that same Section goes on to say that if there was more than 0.15% alcohol present in the defendant's blood this shall be prima facie evidence that the defendant was under the influence of intoxicating liquor.

the accident he found quantities of full and empty beer cans and beer cartons. Trooper Ruppert further testified that he talked to the defendant at the hospital, shortly after the accident, and at that time he denied that he was driving the car involved in the collision. When asked by the police officer how he knew he wasn't driving Wasileski was quoted as having said: "Whenever I drive I don't drink." Ruppert also testified that the more he talked to the defendant the more he could tell that the defendant had "been drinking quite heavily."

In his brief the appellant relies almost exclusively on the case of *Thomas v. State,* 206 Md. 49, 109 A. 2d 909, and suggests that the evidence against the defendant there, which was deemed by this Court to be insufficient to convict of manslaughter by automobile, was very similar to that introduced against him in the instant case. We find that case to be clearly distinguishable because of the dissimilarities between the facts set forth above, and the facts which were present in *Thomas.* In *Thomas,* the holding of the Court was that "the evidence with regard to intoxication was not sufficient to warrant a finding that the appellant was guilty of gross negligence within the established meaning of the statute [then Code (1951), Article 27, Section 455—now Code (1957), Article 27, Section 388] in operating the truck at the time of the occurrence of the tragic accident * * *." In the instant case, we think the evidence was sufficient to sustain the conviction as we point out below.

In the case of *Clay v. State, supra,* at page 584 it was said that "driving while drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination, although not amounting to intoxication * * * [was] a proper matter, with others, for consideration in determining possible gross negligence." In the instant case, the appellant's own diagnosis of why he "blacked out" before the accident, plus the testimony of his passenger, Miss Wolford, as well as the testimony of all the witnesses who observed the defendant after the accident, without a peradventure of doubt, was sufficient to allow the trial judge to find that the defendant-appellant had consumed enough alcohol so as to adversely affect his driving judgment and ability to control his automo-

bile. The evidence of the effect of his consumption of alcohol, coupled with the testimony of an eyewitness, Mrs. Fortney, to the effect that he was flagrantly violating the Maryland traffic laws by driving on the wrong side of the road, during daylight hours, without any good reason for so doing, was sufficient evidence from which the trial judge could have found that the defendant-appellant was driving his car in such a manner as to amount to "a wanton or reckless disregard for human life" and as a consequence that the defendant was grossly negligent and guilty of manslaughter by automobile.

*Judgment affirmed.*