ORVILLE WESLEY THOMAS *v.* STATE OF MARYLAND

[No. 296, Initial Term, 1967.]

*Decided December 5, 1967.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, and ORTH, JJ.

*David N. Bates* and *Johnson Bowie* for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *C. Awdry Thompson, former State's Attorney for Dorchester County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted on July 21, 1966 by the court sitting without a jury of robbery with a deadly weapon and sentenced to ten years imprisonment in the Maryland Penitentiary. He contends on this appeal from that judgment that (a) his statement to police, which was introduced in evidence against him, was involuntary, and (b) that the evidence was insufficient to support the conviction.

There was evidence adduced at the trial from which the trier of fact could find that on November 15, 1965, the appellant, an owner of a tavern in Cambridge, Maryland, drove from Cambridge with one Matto, a companion and employee, to Salisbury, Maryland, where he rented a 1965 Chevrolet, bearing District of Columbia license tags; that the appellant and Matto then returned to Cambridge in the rented car and later that afternoon drove to a lot abutting on Pleasant Street in Cambridge; that appellant remained in the car with the engine running, while Matto walked down Pleasant Street to the home of Mr. and Mrs. William Jones, where he robbed them at gun point of some $32,800.00, including a $1,000.00 bill, two $500.00 bills, a quantity of $100.00 bills and $20.00 bills, and assorted coins (Matto being identified as the robber by the Joneses); that after the robbery, appellant and Matto drove to a bar in Salisbury where they bought drinks for everyone, including two six-packs of beer for each patron, and exhibited both a $1,000.00 bill and a $500.00 bill; and that after the establishment closed, they returned the rental car and appellant drove his own car back to Cambridge, leaving Matto in Salisbury.

The appellant was arrested on November 18 and taken to the Cambridge police headquarters where, in the presence of

his counsel, he gave the police a statement concerning the robbery. It is this statement that he contends was involuntary on the ground that it was induced by promises of bail reduction and lenient treatment. We do not agree. The burden of showing that a confession offered in evidence is a voluntary act of the accused is on the State. *Mercer v. State,* 237 Md. 479; *Cooper v. State,* 1 Md. App. 190. The Supreme Court in *Malloy v. Hogan,* 378 U. S. 1, stated the test of voluntariness in State criminal prosecutions to be as follows (page 7) :

> "* * * the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was 'free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * *'."

At the trial, both the State's Attorney and appellant's lawyer at the time the statement was taken, William Yates, testified that no specific inducements had ever been made to appellant. More specifically, Yates testified that appellant insisted upon making a statement, and that he had advised him that he could tell the truth, but that he didn't have to make any statement. Yates further testified that he felt that the role of a State's witness would be "a good part" for appellant and that he had consulted the State's Attorney about using appellant as such, but that the State's Attorney "did not promise me anything"; that he, Yates, told the appellant that "if he told the truth * * * he would—could get possibly some consideration"; that he further advised the appellant that if he told the truth he thought the State's Attorney would give him some consideration with respect to his bond, "but that there was no promise of immunity, no promises of a lack of prosecution or anything else."

While appellant does not claim that either the police or the State's Attorney induced his statement by any promises made directly to him, he nevertheless argues that both hope and promise were held out to him by his own attorney acting as a "mere conveyor" for the State's Attorney for the purpose of inducing him to make a statement; and that this hope and

promise was in the form of a reduction in bail and the implied promise that he would get "consideration" if he told the truth. His position appears predicated upon the fact that initially he refused to make any statement, and that the statement which he finally gave followed a telephone conversation between the State's Attorney and his lawyer, Yates, carried on in appellant's presence, at which time he overheard Yates's side of the conversation and was led to believe therefrom that there was a possibility of bail reduction and lenient treatment. While we cannot say that appellant was not influenced in making a statement by what he heard of the conversation between the State's Attorney and Yates, in view of the testimony of both the State's Attorney and Yates that no promises were made to induce a statement, we conclude that the trier of fact committed no error in determining that the appellant's statement was freely and voluntarily made. In a trial before a court, sitting without a jury, it is a matter for the trial court to decide whether a statement was freely and voluntarily given, and its determination will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Johnson v. State,* 1 Md. App. 217. We find no such abuse here.[1]

Appellant next contends that the evidence was insufficient to establish that he was either a principal or accessory to the crime. As appellant was indicted only as a principal, the proof, to be legally sufficient to sustain the conviction, must show that he was a principal and not an accessory. See *Agresti v. State,* 2 Md. App. 278.

---

1. Although the interrogation of the appellant took place prior to the decision in *Miranda v. Arizona,* 384 U. S. 436, the case was tried subsequent to that decision, so that, if applicable, the protections afforded by *Miranda* would be available to appellant. As appellant's counsel had a full opportunity to confer with him prior to interrogation, and was present throughout the interrogation, and asked all but a few of the questions, it is not contended that any of his rights under *Miranda* were violated. Indeed, under such circumstances, no such contention could be fruitfully made since the "protective device" which the *Miranda* court thought necessary to dispel the compelling atmosphere of police interrogation, viz., the presence of counsel, was not wanting. See *Miranda* at page 466, 470.

The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Kucharczyk v. State*, 235 Md. 334, 337; *Chittum v. State*, 1 Md. App. 205, 209.

As heretofore indicated, the evidence clearly showed that appellant and Matto rented a car in Salisbury, returned in it to Cambridge, and drove to the robbery scene. While appellant kept the motor running, Matto entered the Jones' home to perpetrate the robbery. From a photograph introduced in evidence at the trial, the Jones' home was shown as being only a short distance away from where appellant had parked the car, and it was in his clear view as he sat in the vehicle. There was evidence indicating that appellant had a paper over his face and appeared to be reading, although in the estimation of a witness who observed him there, it was too dark to read. The evidence further indicated that after waiting for some twenty-five to thirty minutes, Matto returned to the car, told appellant to "Get the hell out of here," and both men then drove to a Salisbury bar where they bought drinks and large quantities of beer for all the patrons, exhibiting a $1,000.00 bill and a $500.00 bill at the time.

It is well settled that persons, actually or constructively present, aiding and abetting the commission of an armed robbery, but not themselves committing it, are principals in the second degree. *Vincent v. State*, 220 Md. 232; *Agresti v. State, supra*. While appellant was not actually present at the immediate place of the perpetration of the robbery, he was, as in *Vincent*, in close proximity and contiguity thereto and in such a position to be of aid and assistance to Matto in the successful perpetration of the crime. One who keeps watch or guard at such convenient distance as to afford aid or encouragement to the actual perpetrator of a robbery is clearly a principal. *Vincent v. State, supra*, at page 239. The trier of fact could draw a rational inference from the evidence that the appellant was aiding and assisting Matto in the robbery; that he was to have the car ready for a "get away"; and that he was a

participant in the division of the proceeds of the robbery as evidenced by his spending spree in the Salisbury bar immediately following the crime. Under these circumstances, the trier of fact was not obliged to believe that appellant's presence with Matto at the scene of the crime was innocent and unknowing. Nor can appellant avail himself of the rule that when guilt is based *solely* on circumstantial evidence, the circumstances must exclude every reasonable theory of innocence, *Brown v. State*, 222 Md. 290, since there exists here a measure of direct evidence, including appellant's own statement.

*Judgment affirmed.*