### DOUGLAS MONTAGUE *v.* STATE OF MARYLAND

[No. 137, September Term, 1967.]

*Decided February 1, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-- SON, MORTON, ORTH, and THOMPSON, JJ.

*J. Thomas Nissel* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein,. State's Attorney for Howard County,* and *Cornelius J. Hel- frich, Assistant State's Attorney for Howard County,* on the· brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On May 4, 1967, the appellant, Douglas Montague, was con- victed of manslaughter by automobile in the Circuit Court for

Howard County, Judge James Macgill sitting without a jury. Appellant was sentenced to three years in the Maryland House of Correction.

Appellant's sole contention raised on this appeal is that the evidence was not sufficient to sustain the conviction.

On February 4, 1967, at approximately 7:30 a.m., Mr. Lester John Cuffley, Jr., was driving a truck northbound on U. S. Route #1 nearing the intersection with Maryland Route #175, traveling between 40-45 miles per hour, in a 50 mile per hour speed zone. He observed in his rear view mirror a car approaching his rear "pretty fast" and swerving from the slow to fast lane, riding over the broken line, going back and forth "like somebody playing with the wheel, pulling it back and forth." When the vehicle neared him, he observed two occupants, a man driving and a woman passenger. He first thought that the car, an Oldsmobile, was going to collide with the rear of his truck, but it swerved away and then back toward the truck causing Cuffley to believe a collision would occur with the side of the truck. The Oldsmobile "then shot straight away from me like somebody would turn a wheel real fast," crossed the solid yellow line separating the north and southbound lanes, and struck a Studebaker in the southbound slow lane. Mr. Cuffley stopped his truck and got out. He observed the driver of the Oldsmobile get out from the driver's side, call to the woman passenger, who also got out, and both ran from the scene. The man had covered his face with his hands but removed his hands when about six feet from Mr. Cuffley when calling to his passenger, and he viewed the driver's face for approximately 10-12 seconds.

In court, Mr. Cuffley positively identified the appellant as the driver of the Oldsmobile.

James Thompson testified that he arrived on the scene immediately after the collision and observed a male and female running from the Oldsmobile. As they fled the scene, Mr. Thompson called to the male to stop, when he was twenty-five feet away, but he continued his flight.

Mr. Thompson identified the appellant in court and had also picked him from a lineup at the Waterloo Barracks on the same day as the accident.

Trooper Daniel Earl Stanton testified that he had stopped the appellant at a Transit Truck Stop, south of Laurel on U. S. Route #1, between 6:50 a.m. and 7:10 a.m. on February 4, 1967. Appellant was driving an Oldsmobile, traveling south and weaving in the slow lane. Appellant did not have an operator's license. Trooper Stanton charged him with operating a motor vehicle without a license and informed him that he would have to leave the car there and take a cab or bus home. There was an odor of alcohol noted on appellant's breath, but he was not charged with drunken driving. After the trooper left, the appellant completely disregarded the admonition and continued to operate the vehicle.

The accident investigators established that the point of impact was in the center of the slow southbound lane, approximately eighteen feet from the center line. No skid marks were noted leading up to the point of impact; however, a side skid mark of one hundred and forty feet was observed leading away from the point of impact to the Oldsmobile. The Studebaker had been shoved backwards thirty feet from point of impact. The Oldsmobile struck the Studebaker on the driver's side at the left door. The force of impact caused the Studebaker to completely reverse its direction of transit.

Paul C. Garner, the operator of the Studebaker, died as a result of multiple traumatic injuries, including a fractured neck sustained in this accident.

Article 27, § 388 of the Annotated Code of Maryland states:

> "Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, * * * or other vehicle, in a grossly negligent manner, shall be guilty of the misdemeanor to be known as 'manslaughter by automobile' * * *."

The applicable test discerning whether the standard "in a grossly negligent manner" of the statute stands violated or not has been established through a succession of cases to be as initially enunciated in *State of Maryland v. Chapman,* 101 F. Supp. 335 at 341 (1951), where the court said:

"whether the conduct of the defendant, considering all the factors of the case, was such that it amounted to a 'wanton or reckless disregard for human life.' "

This doctrine was also followed in *Hughes v. State,* 198 Md. 424, 432, 84 A. 2d 419 (1951) ; *Duren v. State,* 203 Md. 584, 588, 102 A. 2d 277 (1954) ; *Thomas v. State,* 206 Md. 49, 51, 109 A. 2d 909 (1954) ; *Clay v. State,* 211 Md. 577, 584, 128 A. 2d 634 (1957) ; *Lilly v. State,* 212 Md. 436, 442, 129 A. 2d 839 (1957) ; *Johnson v. State,* 213 Md. 527, 531, 132 A. 2d 853 (1957) ; *Abe v. State,* 230 Md. 439, 440, 187 A. 2d 467 (1963) ; and *Wasileski v. State,* 241 Md. 323, 324, 216 A. 2d 551 (1966).

In *Hughes v. State, supra,* fast driving and swerving the vehicle toward a group of people, without an intent to harm, was sufficient to establish conduct constituting a wanton or reckless disregard for human life.

In *Duren v. State, supra,* at 591, the Court of Appeals speaking through Judge Hammond (presently Chief Judge) stated:

"If there is found such lack of control, whether by reason of speed, or otherwise, in a place and at a time when there is a constant potentiality of injury as a result, there can be found a wanton and reckless disregard of the rights and lives of others and so, criminal indifference to consequences."

The lessening of the control of the vehicle by reason of speed in the environment of a city street sufficiently established the gross negligence necessary to sustain the conviction.

*Clay v. State, supra,* stated "failure to keep a proper lookout; passing recklessly at an intersection; striking a pedestrian in a crosswalk; excessive speed under the circumstances; driving while drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination, although not amounting to intoxication; and flight," were proper factors to review in a determination of gross negligence. In discussing flight, the Court quoted at p. 585, *People v. Allen* (Ill.) 14 N. E. 2d 397, 407, wherein it was stated:

> "Flight from the scene of a collision without any effort to ascertain the extent of the injuries caused by his act or to aid the injured person may be taken into consideration as evidence of guilt."

The Court went on to say "[a]nd this is so even though the flight may consitute a criminal offense." Therein the Court found that passing at an intersection, drinking although not intoxicated, excessive speed in the city and flight were sufficient to sustain the conviction.

In *Lilly v. State, supra,* drinking, although the blood test established that defendant was not intoxicated and the State did not contend that defendant was operating under the influence, was a proper matter to consider along with excessive speed, as attested to by a witness and "the location of the vehicle after the accident, the damage to the vehicles, and the injuries suffered," and failure to stop at a stop sign proved a sufficient basis to sustain the conviction.

*Abe v. State, supra,* found "traveling at excessive speed," "drinking to an extent likely to affect his driving judgment" and operating his vehicle on the wrong side of the road, sufficient evidence of gross negligence to sustain the conviction.

*Wasileski v. State, supra,* found that drinking although technically not intoxicated and flagrantly violating the Maryland traffic laws by driving on the wrong side of the road "without any good reason for so doing" was sufficient evidence to sustain the conviction.

In the instant case, the appellant was positively identified, at trial, as the operator of the Oldsmobile, at the time of the accident, by witness Lester John Cuffley, Jr. In addition, the appellant had been stopped and identified as the operator of the Oldsmobile by Trooper Stanton shortly before the accident. Furthermore, he was identified in a lineup on the day of the accident and at trial as the party fleeing from the Oldsmobile and called to, to stop by James Thompson.

It is well established that the positive identification of a single eye-witness, if believed by the trier of facts, is ample evidence to sustain a conviction. *Walters v. State,* 242 Md. 235, 237, 218 A. 2d 678 (1966) ; *Hutchinson v. State,* 1 Md. App. 362,

367, 230 A. 2d 352 (1967); *Crumb v. State,* 1 Md. App. 98, 103, 227 A. 2d 369 (1967).

From the evidence adduced below the trial court properly found that the appellant was the operator; that he had swerved his vehicle onto the wrong side of the road; that he had fled from the scene of the accident; that he was without an operator's permit and had been fully informed that he had no right to drive and chose to disregard that notice. Furthermore, there was evidence of failure to keep a proper lookout; drinking not amounting to intoxication; failure to maintain proper control; passing recklessly and excessive speed, as evidenced by the impact, skid marks and testimony of the eye-witness Cuffley, all of which are proper matters of consideration in a determination of possible gross negligence.

The test of the sufficiency of the evidence in a nonjury case is "whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Thomas v. State,* 2 Md. App. 502, 507, 235 A. 2d 777 (1967); *Chittum v. State,* 1 Md. App. 205, 209, 228 A. 2d 628 (1967).

We find that the appellant's flagrant disregard of the elementary principles of the Maryland traffic laws; operation of a motor vehicle without having qualified for an operator's permit, which to us raises a prima facie presumption of the inability to properly operate a motor vehicle; total disregard of a police officer's admonition not to drive; erratic switching of lanes; swerving onto the wrong side of the road and flight from the scene of the collision, together with some evidence of drinking, meets the test established by the cases cited. Upon the record before us, we find that the trial judge's finding was not clearly erroneous. Maryland Rule 1086.

*Judgment affirmed.*