## MULLIGAN *v.* PRUITT

[No. 479, September Term, 1965.]

*Decided November 10, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and FINAN, JJ.

*John M. McInerney,* with whom were *McInerney, Latham &
Layne* on the brief, for appellant.

*John F. McAuliffe* and *R. Edwin Brown* for appellee.

FINAN, J., delivered the opinion of the Court.

This appeal involves an action by an infant appellee (plain-
tiff below), Thomas Y. Pruitt, brought through his father, John
S. Pruitt, against Carol B. Reinecke Mulligan, appellant (de-
fendant below), for personal injuries sustained when the in-
fant was struck by an automobile operated by the appellant on
October 14, 1962, at approximately 6:30 P.M., on Jennings
Road, Kensington, Montgomery County, Maryland. At the time
of the accident the appellant was also a minor, being 19 years
of age, and the infant appellee was 2 9/12 years of age. The
accident occurred shortly before dark while the appellant was
traveling in a westerly direction on Jennings Road and the ap-
pellee was in the process of crossing the road from the north
side to the south side. The point of impact occurred to the
right of center of Jennings Road, which is a 26 foot wide thor-
oughfare. There was evidence of parked cars at intervals along
both sides of the road, leaving a clearance for vehicular traffic
of about 14 feet. The area is a residential section, the road be-
ing flanked by many shade trees. There was evidence that a
group of children was playing in a front yard at 3113 Jennings
Road; the accident occurring in front of 3115, the lots being 50
feet in width. There was also testimony that a little dog ran
across the road almost immediately before the accident. The
appellant testified that she saw the children playing in the yard
as she approached the place where the accident occurred and
slowed down. She says that she did not see any dog and all
she saw of the appellee was "blond hair just coming out be-

hind a car, so I slammed on my brakes and stopped." The impact shattered the glass in the right front headlight of the appellant's car, and the appellee, barefoot and clad only in a shirt and diapers, was knocked to the ground unconscious approximately two feet in front of the car. The appellant testified that the appellee stepped out from in front of a parked car on her right side of the road. The measurements made by a police officer called to the scene indicated that the point of impact was approximately 28 feet from the front of the car parked to her right of the road (north side).

The contour of Jennings Road is such that the point of impact was practically on the crest of a hill (10 to 15% grade), and near where the road started to curve to the appellant's left.

Immediately prior to the accident the appellant had been visiting with teenage friends at the home of the Himelright family, 3011 Jennings Road. The group decided to leave this residence and drive to the house of Mike Stevens, one of the persons in the group. Stevens departed first in his vehicle with passengers. The appellant and another girl followed in the car operated by the appellant, who did not know the address or whereabouts of the Stevens' home and planned to follow the Stevens' vehicle to the intended destination. The distance traveled from the Himelright home to the place where the accident occurred is approximately 500 to 550 feet, the first half of the distance being down hill and the remainder being up hill.

Officer Umholtz of the Montgomery County Police Department measured one set of skid marks, identified as having been made by the appellant's car, one mark running from the right rear wheel for a distance backward of 28 feet, and one from the left rear wheel a distance backward of 20 feet. Other witnesses, Mr. Smith and his daughter, Mrs. Shoup, testified to two sets of skid marks totalling approximately 46 feet measured from the rear of the appellant's automobile.

The only eye witness, Pamela O'Dell, an 8 year old girl, who was perched in a tree in the Pruitt's yard in front of which the impact occurred, testified that a little dog with which the appellee was playing ran across the street and that appellee followed it. On direct examination she testified that appellee had stopped at the edge of the street, looked to see if the road was

clear, let the Stevens' car go by and then, while attempting to cross the road, was hit by the appellant's vehicle. She also testified that the appellee was quite a way in front of the vehicle parked on the right or northside of the road at the time he was struck. On cross-examination, redirect and recross, she became ambiguous as to whether the appellee ran after the dog into the street or walked into the street, or whether or not he was actually following the dog at all.

Both Mr. Smith and his daughter, Mrs. Shoup, neighbors who lived diagonally across the street from the Pruitts, testified as to the excessive speed of the vehicles. Mrs. Shoup said the vehicles were going 30 to 35 miles per hour. She said she saw the cars coming and because of the speed at which they were traveling she went to the edge of the roadway to pick up her own 1½ year old child and returned him to the safety of their porch. She did not observe the vehicles during the last 100 feet but heard the brakes screech, she then turned around and saw that the appellee had been hit. Mr. Smith, a man 52 years of age, said he did not see the accident because he was in the back yard of his home, almost 85 feet from the street, but that "I heard the cars roaring as if they were speeding", and he, on cross-examination, placed the speed of the vehicles, from their sound, in excess of 25 miles per hour. The posted speed limit for Jennings Road was 25 miles per hour.

The jury returned a verdict in favor of the appellee in the amount of $140,000.00. Motions for a new trial, judgment n.o.v. and a remittitur were all refused by the lower court. From the lower court's refusal to direct a verdict in favor of the appellant (defendant) this appeal was taken.

This case presents the following questions to this Court: (a) was there legally sufficient evidence offered in the court below, as to the appellant's negligence, to justify the trial judge's action in allowing the case to go to the jury, (b) assuming that there was legally sufficient evidence as to the appellant's negligence was such negligence the proximate cause of the accident?

i

We think that the trial judge had little choice but to find that there was legally sufficient evidence, as to the appellant's negligence, to warrant the submission of the case to the jury.

In such cases as this, one's attention is first drawn to the physical characteristics presented by the scene of the accident. Here we have a neighborhood representative of suburbia. Houses placed on 50 foot front lots, a tree shaded narrow road, with parking on both sides, leaving a fourteen foot passageway for motor vehicles, the presence of children playing in front yards, in the fleeting few minutes before an autumn dusk brings quiet to the street. The *prima facie* limit of speed was 25 miles per hour, however, Art. 66½, sec. 211(c), Code (1957), provides that such posting "shall not relieve the driver from the duty to decrease speed * * * when approaching or going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway * * *." The trial judge properly called attention to this requirement of the motor vehicle regulations in his instructions to the jury.

The defendant in her testimony stated:

> "We got in the cars; Mike Stevens drove off and then I drove off, and we proceeded—we just went a little down the hill and through the dip and up the hill, and I noticed some children playing in the yard, * * *. I wasn't going too fast but I slowed down because I noticed the children, and then I saw blond hair just coming out behind a car, so I slammed on my brakes and stopped."

In *Dorough v. Lockman,* 224 Md. 168, 171, 167 A. 2d 129, 131 (1961), this Court recognized that, "Undoubtedly a driver must exercise greater caution to avoid harming a child who is in a place or situation of immediate or potential peril than he would in the case of an adult, * * *."

The defendant testified that she was going 20 miles an hour at the time of the accident. There was other evidence submitted, which will be later discussed, from which a contrary conclusion could have been drawn. It was within the province of the jury to weigh this evidence. *Rabinovitz v. Kilner,* 206 Md. 455, 464, 112 A. 2d 483, 487-88 (1955).

Officer Umholtz testified as to the existence of skid marks. In addition Mr. Smith testified as to two sets of skid marks, the first being about 12 feet, then a break of 8 feet and then an-

other set of 26 feet, totaling about 46 feet. His daughter, Mrs. Shoup, corroborated this in her testimony. Some umbrage was voiced over the fact that the officer had not mentioned anything about two sets of skid marks; but this may well be rationalized by the consideration that when the officer began his measurements, darkness had set in. Although it must be conceded that Mr. Smith and Mrs. Shoup are not traffic accident investigation experts, yet no objection was raised by the appellant's counsel at the time their testimony was given. It may be noted that testimony of a lay witness as to skid marks was introduced in the case of *Sheer v. Rathje,* 174 Md. 79, 197 Atl. 613 (1938).

The appellant's counsel also raised objection to the qualifications of Mrs. Shoup as a competent witness as to the speed of the vehicle operated by the appellant. It was established that she had 5 years driving experience as a licenced operator. We feel that her testimony was properly admitted by the trial judge. *Lilly v. State,* 212 Md. 436, 444, 129 A. 2d 839, 843 (1957) ; *Miller v. Graff,* 196 Md. 609, 617, 78 A. 2d 220, 223 (1951).

The appellant also objected to Mrs. Shoup's testimony, regarding the speed of the appellant's vehicle, on the premise that she had not had a sufficient period of time in which to observe the appellant's automobile as it approached the scene of the accident. The appellant endeavored to equate the instant case with that of *Fowler v. Smith,* 240 Md. 240, 213 A. 2d 549 (1965). We find the pertinent facts of *Fowler* readily distinguishable. In *Fowler,* the only evidence of the excessive speed was testimony adduced from a construction employee, named Krout, working off the south side of the roadway about 300 feet east of the scene of the accident. He testified he first saw the defendant's truck approaching from the west when it was about 600 feet from him and that it was "going right along at a good speed." (At 246, 213 A. 2d 549, 553.) Then after testifying that he drove an automobile, he stated that the defendant was going approximately 40-45 miles per hour. The accident occurred in a 50 mile an hour zone.

This Court stated in *Fowler v. Smith, supra,* at 248, 213 A. 2d 549, 555:

"We hold that the evidence allegedly establishing Smith's [Defendant] speed to have been unreasonable and imprudent amounted, at the most, to no more than a fleeting scintilla of evidence in that direction, * * *."

In the instant case Mrs. Shoup was in the front yard of the residence, almost directly opposite from where the accident occurred; her position with reference to the point of impact and that of the position of Krout in *Fowler,* is not comparable. Her observation amounted to more than a "fleeting scintilla of evidence." What she saw prompted immediate response on her part in going to the highway's edge to secure her own child. Her testimony was corroborated by Mr. Smith. There is no corroboration of Krout's testimony in *Fowler.*

Although no objection was raised to the testimony of Mr. Smith, with reference to the speed of the vehicles, yet after the ruling of the Court against the appellant on her motion for a directed verdict, counsel moved to strike Smith's testimony as his estimate of the speed of the vehicles was predicated on the sound of the motors. The question of whether a witness may state an opinion as to the speed of an automobile which he has heard but not seen, raises an interesting question, there already being a split of authority on this question, 8 Am. Jur. 2d, *Automobiles and Highway Traffic,* § 986 (1963), Annot. 156 A.L.R. 387 (1945). This case might well have presented an opportunity for this Court to make some new law, if it were not for the fact that the appellant failed to make a timely objection to the admissibility of this evidence, choosing instead to rely on his efforts to discredit Mr. Smith's testimony on cross-examination.

The appellant made a motion to strike the testimony of Mr. Smith, only after both sides had rested and after the appellant's motion for a directed verdict had been denied. The motion to strike was untimely. Rule 522 d 2. We, therefore, hold there was legally sufficient evidence, presented in the court below, as to the appellant's negligence, to justify the trial judge allowing the case to go to the jury.

ii

It is also the opinion of the Court that the jury, once hav-

ing found the appellant negligent, was justified, from the evidence before it, in finding that the appellant's negligence was the proximate cause of the accident.

In *Finlayson v. Gruzs,* 222 Md. 192, 159 A. 2d 864 (1960), relied on by the appellant and which is without cavil, a "dart out" case, the court let the case go to the jury with instructions quite similar to those employed in the instant case by the court below.

In the case at bar the testimony was such that a jury could properly find, and obviously did, that it was not a "dart out" case, such as confronted this Court in *Dorough v. Lockman, supra, Finlayson v. Gruzs, supra,* and *Cocco v. Lissau,* 202 Md. 196, 95 A. 2d 857 (1953).

The testimony of Officer Umholtz justifies the conclusion that the infant appellee was struck some 28 feet beyond the front of the car that was parked on the appellant's right and from in front of which she alleges he emerged. The testimony of Pamela O'Dell corroborated the testimony of Officer Umholtz when she testified:

"Q. And when Tommy went out·there, did he go out in front of the Sigmons' automobile [car parked on the right] ?

"A. He was quite a ways in front of the automobile."

The jury could also have believed from her testimony that the appellee looked up and down the street before he started across and that he waited for the first vehicle to pass before be made any further attempts to cross Jennings Road.

There is no need to consider contributory negligence in this case as the infant appellee was only 2 9/12 years old and as a matter of law could not have been guilty of contributory negligence. *Mahan v. State,* 172 Md. 373, 385-86, 191 Atl. 575, 581 (1937).

We, therefore, hold that there was legally sufficient evidence from which the jury could find that the primary negligence of the appellant was the proximate cause of the accident. There should be no legal legerdemain about the doctrine of proximate cause. It simply means the appellant's negligence caused the injury complained of, without the intervention of any indepen-

dent factor. *Aravanis v. Eisenberg,* 237 Md. 242, 257-58, 206 A. 2d 148, 156-57 (1965) ; *Garbis v. Apatoff,* 192 Md. 12, 16-17, 63 A. 2d 307, 309 (1949) ; *Parsons v. C. & P. Telephone Co.,* 181 Md. 502, 505, 30 A. 2d 788, 790 (1943).

In accordance with the views above stated the judgment will be affirmed.

*Judgment affirmed, with costs.*