EUGENE ANTHONY GRAY *v.* STATE OF MARYLAND

[No. 232, September Term, 1967.]

176

*Decided May 16, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris L. Kaplan* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

On January 30, 1967, the appellant, Eugene Anthony Gray, was convicted of murder in the second degree, in the Criminal Court of Baltimore, Judge Albert L. Sklar presiding, without a jury, and sentenced to fifteen years imprisonment.

Appellant raises two contentions on appeal:

1. That the trial court erred in refusing to grant the appellant's Motions for Verdict of Acquittal at the end of the State's case and at the conclusion of the entire case.
2. That the trial court was clearly erroneous in disregarding the lack of legal sufficiency in the evidence of the case.

The evidence adduced at the trial established that one Joseph Page was shot five times, one frontal wound in his leg and four rear entries into his neck, chest and back, while involved in an altercation with the appellant. The aforementioned altercation occurred on May 30, 1966, at approximately 1:30 a.m., at North Franklintown Road, Baltimore, Maryland. Mrs. Frances

178

Page, the deceased's wife, testified that the deceased had arrived home at approximately 1:00 a.m. and expressed his displeasure with appellant's failure to wear a shirt while visiting her daughter and subsequently went upstairs, ostensibly to bed, returning about ten minutes later to pick up the appellant's shirt, throwing same at him, stating, "don't ever let me catch you in my home again this way." She further testified that, shortly thereafter, the record player in the basement began playing improperly and her daughter, Patricia Bailey, was on her way to correct it when stopped by the deceased. Appellant then came from the living room and stood behind Patricia Bailey, facing the deceased, and "requested that he could get his hat and coat so that he might leave," to which the deceased replied, "that depends on how bad you want it," and with that the shooting began. Her testimony further set forth that she had not seen the actual shooting, but had observed, earlier in the evening, that the appellant possessed a gun; however, she did not see her husband with a gun, although she knew he possessed one on the premises and that the gun found at the top of the cellar steps was that gun.

Patricia Bailey, an eye-witness to the actual shooting, gave testimony substantiating her mother's testimony regarding those matters preliminary to the actual shooting. In addition thereto, she further testified that when the deceased, her stepfather, blocked her passage, she believed he was going to strike her, so she jumped back. At that point, the appellant made the aforenoted request and the exchange occurred which culminated in the shooting death of the deceased. Her testimony added that the deceased had arched his hand "as though he was going for his back pocket" when appellant fired a shot and the deceased then "turned to run" and "ran down the basement," at which time the appellant "ran to the top of the steps and continued shooting" down the stairs. Thereafter, appellant fled from the house with his gun.

The appellant testified he had been visiting Patricia Bailey and became overheated while dancing and, with her permission, removed his shirt. His testimony regarding those matters leading up to the shooting was substantially the same as the witnesses Page and Bailey. With respect to the actual shooting, he

testified that the deceased had "put his hand in his pocket" and that he "seen" the handle of the deceased's gun as he withdrew it. He further stressed, with respect to the gun, that the deceased then "pulled it all the way out and pointed it at me" and "that is when I kept on shooting" and emptied his gun at the deceased while "he was still running down the steps." Appellant further testified that he fired only four shots, all of which were fired "aiming low at the steps."

At the conclusion of the State's case, the appellant made a Motion for Judgment of Acquittal, which was denied by the trial court. Subsequent thereto, the appellant took the stand in his own behalf and thus withdrew his motion. Maryland Rule 755 b; *Brooks v. State,* 3 Md. App. 485; *Lucas v. State,* 2 Md. App. 590, 592, 235 A. 2d 780, 781 (1968); *Loker v. State,* 2 Md. App. 1, 19, 233 A. 2d 342, 354 (1967); *McGlothlin v. State,* 1 Md. App. 256, 229 A. 2d 428, 430 (1967).

In reviewing the lower court's denial of a Motion for Judgment of Acquittal, made at the conclusion of the case, the review becomes a determination of the sufficiency of the evidence. *Brooks v. State, supra.* Therefore, appellant's urging that the lower court erred in not granting his renewed Motion for Judgment of Acquittal at the close of the entire case is redundant and merges with his second contention that the evidence was not sufficient to sustain the conviction. *Lucas v. State, supra; McGlothlin v. State, supra,* 261.

The applicable test in reaching a determination of the sufficiency of the evidence in a non-jury case is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Speaks v. State,* 3 Md. App. 371, 379, 239 A. 2d 600, 605 (1968); *Anderson and Washington v. State,* 3 Md. App. 362, 369, 239 A. 2d 579, 583 (1968); *Montague v. State,* 3 Md. App. 66, 72, 237 A. 2d 816, 820 (1968). In non-jury trials the weight of the evidence and the credibility of the witnesses rest within the determination of the trial judge. *McRae v. State,* 3 Md. App. 388, 393, 293 A. 2d 607, 610 (1968). *Anderson and Washington v. State, supra,* 369; *Lucas v. State, supra,* 593. Furthermore, in non-jury trials,

the trial court in performing its duty of judging the credibility of witnesses may disbelieve the exculpatory statements made by the defendant. *Anderson and Washington v. State, supra,* 369.

The thrust of the appellant's argument is that he acted in self-defense and that all of the evidence clearly substantiated his urging. However, it is clear that the burden of proving self-defense rested upon the appellant. *Davis v. State,* 237 Md. 97, 103, 205 A. 2d 254, 258 (1964).

As was stated in *Tipton v. State,* 1 Md. App. 556, 232 A. 2d 289, 291 (1967) at page 560:

> "In order to justify an assault on the basis of self-defense, the accused must have had reasonable grounds to believe, and have in fact believed, himself to be in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant. The trier of facts must determine whether the accused was justified in meeting force with force. If justification is found to have existed, the force used against the assailant must not have been unreasonable or excessive, i.e., the defender must not have used more force than the exigency reasonably demanded."

And in *Ware v. State,* 3 Md. App. 62, 65, 237 A. 2d 526, 528 (1968), we again noted that:

> "The law is clear that although a person may defend himself, even to the extent of taking life to repel the attack of an aggressor, it is equally well settled that he cannot use more force than is necessary."

Assuming arguendo the appellant's urging that the deceased was the aggressor, the appellant's subsequent actions were inconsistent with his contention of self-defense. Here the evidence clearly established that after being struck by the first shot fired by the appellant, the deceased turned and fled down his cellar stairs, apparently dropping his gun in the process. At this juncture, the appellant pressed his pursuit of the fleeing deceased by firing four shots into his back, patently exerting force of an unreasonable and excessive nature under the instant circumstances.

This Court cannot reverse a judgment of the lower court unless it is shown that there was no legally sufficient evidence, or proper inferences therefrom, from which that court could find the accused guilty beyond a reasonable doubt. *Anderson and Washington v. State, supra,* 371. Such prerequisite showing was not established in this case and we certainly cannot say that the judgment of the lower court was clearly erroneous. Maryland Rule 1086; *Speaks v. State, supra,* 379; *Anderson and Washington v. State, supra,* 371; *Lucas v. State, supra,* 593.

*Judgment affirmed.*