## CARROLL HERMAN TEFKE v. STATE OF MARYLAND

[No. 182, September Term, 1968.]

140

*Decided February 18, 1969.*

*John B. Fox* (*David A. Hyman* on the brief) for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Hilary D. Caplan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, Carroll Tefke, was convicted of manslaughter by automobile in the Criminal Court of Baltimore, Judge Wil-

liam J. O'Donnell sitting without a jury. He was sentenced to one year under the jurisdiction of the Department of Correctional Services and was fined $500.

On appeal, the appellant raises the following questions:

I—Whether the testimony of Mrs. Kelly as to the speed of appellant's automobile was properly admitted in evidence?

II—Whether the trial court erred in denying appellant's Motion for Judgment of Acquittal at the end of the State's case and at the end of the entire case?

III—Whether there was sufficient evidence to sustain the conviction?

The accident giving rise to these proceedings occurred on a clear dark night of December 7, 1967, at 7:30 p.m., at the intersection of Frankford Avenue and Walther Avenue in Baltimore. A plat made by an officer of the Accident Investigation Division of the Baltimore City Police Department sets forth the physical conditions of the intersection in detail. Frankford Avenue runs east and west, and Walther Avenue runs north and south. To the east of the intersection, Frankford Avenue is divided by a center line and is 28 feet wide. There is a 5 foot sidewalk at the southeast corner. South of the intersection, Walther Avenue is divided by a 20 foot wide grass plot into north and south lanes. There are two northbound lanes, each 11 feet wide on level grade. Along the east curb of Walther Avenue is a 5 foot strip of grass and a sidewalk. North of the intersection, Walther Avenue widens so that its east and west curbs are offset by 8 feet from the corresponding curb lines south of the intersection. On the north side of the intersection Walther Avenue is divided by a 4 feet wide cement island. Reading from east to west, the traffic lanes on Walther Avenue north of the intersection are 21 feet and 13 feet in width (for the two northbound lanes), the island, and 10 feet, 10 feet, and 22 feet in width for the three southbound lanes, the first 10 foot lane being for left turning traffic. The intersection is governed by automatic traffic signals all phasing green-amber-red and red-green. The signals for northbound traffic on Walther Avenue are suspended,

one in each lane, about 3 feet north of the north curb extension line of Frankford Avenue. The speed limit on Walther Avenue is 30 miles per hour.

The appellant had been proceeding north on Walther Avenue; the deceased had been proceeding west on Frankford Avenue. The point of impact was 20 feet north of the southeast curb line of Frankford Avenue and 20 feet west of the northwest corner of the intersection. The deceased's vehicle came to rest facing southwest 41 feet north and 30 feet west of the point of impact. The appellant's vehicle was found straddling the concrete island facing southwest, 31 feet north and 30 feet west of the point of impact, with its left rear in contact with the right rear of the deceased's vehicle. The appellant's vehicle had heavy frontal damage from left to right, while the deceased's vehicle sustained heavy damage on the center of the left side. Just north of the rear of the appellant's vehicle was the vehicle of Mrs. Kelly; just west of the deceased's vehicle was the vehicle of Mr. Sleitzer. Both the Kelly and Sleitzer vehicles had also sustained damage.

The cause of death of the deceased was multiple traumatic injuries.

At trial Mrs. Elizabeth M. Kelly testified that she was southbound on Walther Avenue and had been stopped in the left turn lane next to the island for six or seven seconds waiting for a red light displayed against her, when she first observed the appellant's vehicle about 100 feet away from the intersection. She testified that she "saw him just keep coming, and I glanced up and I saw that his light was red on that side of the street, the same as the light was red on my side of the street and I saw . . . no braking, no slowing down." She saw the collision, and the front of her automobile was pushed sideways when the rear of the deceased's car came to rest against her front end. Mrs. Kelly had driven an automobile for 19 years and estimated the appellant's speed as being between 50 and 55 miles per hour.

Mr. William Sleitzer testified that he was southbound on Walther Avenue and had been stopped for 2 or 3 seconds in the westernmost lane for a red light. He had seen the light change

red for him when he was about 100 feet north of the intersection. He stated that he had heard, but not seen, the vehicles collide; and that his vehicle and Mrs. Kelly's vehicle arrived at the intersection at about the same time.

Officer Richard J. Taylor, who investigated the accident, testified that there were no skidmarks in or near the intersection but that at the point of impact there were tire marks and dig marks. He stated that when he interviewed the appellant two hours after the collision he observed an "odor of intoxicants on his breath," "stale beer smell," and that the appellant was restless and irritated.

The appellant testified that after work on December 7, 1967, he went to a local tavern and had two or three glasses of beer, remaining in the tavern for 45 minutes. He left the tavern shortly after 7:00 p.m. and drove north on Walther Avenue south of Frankford Avenue occupying the left lane next to the grass median plot. He stated that he was driving at a speed of 25-30 miles per hour and that while approaching the intersection he observed that the automatic traffic signal was red; he looked (left) to the Frankford Avenue side of the light and observed that it was orange; he then entered the intersection on a green light. As he entered the intersection, he observed headlights from the right and applied his brakes. He testified that he did not see any lights until he entered the intersection because of a hedge-row on the southeast corner of the intersection. (This hedge-row does not appear on the investigating officer's plat, and appellant's was the only testimony referring to it). He stated that he was in a normal condition on the evening of the accident and knew what he was doing.

On cross-examination he testified that his driving speed was 25 miles per hour at a distance of 200 feet south of the intersection, but that he does not recall how fast he entered the intersection. He stated that he was 50 feet away from the intersection when the light changed green in his favor; that his first observation of the red light at the intersection was made when he was one block from the intersection; and that it took him 35 to 40 seconds to reach the intersection from one block away.

## I—TESTIMONY AS TO SPEED

The appellant's contention that Mrs. Kelly should not have been allowed to testify as to the speed of appellant's automobile is not properly before us on appeal, since the trial transcript does not indicate that any objection to her testimony was made at trial. See Maryland Rules 522(d) (2), 725(f) (which applies the civil rule to criminal trials), and 1085.

However, the question presented is of some interest, and we will briefly elucidate our views on it. The appellant's contention is that Mrs. Kelly did not observe appellant's automobile from such a posture and for such time as would qualify her to testify to its speed. It is not open to question that observation of the matters to be testified to is an essential element in the qualifications of every witness. *Lambert v. State,* 197 Md. 22, 26, 78 A. 2d 378 (1951) ; Wigmore, *Evidence,* § 650 (3rd ed.). In *Lambert v. State, supra,* one of the issues was the admissibility of certain testimony where the defendant complained that the witness did not possess sufficient information to testify. The Court of Appeals, at page 26, expressed the general rule that:

> "By 'observation' we mean that direction of attention which is the source of impressions, and thus of knowledge . . . It is sufficient [to allow the witness to testify] if the witness had an opportunity of personal observation and got some impressions from this observation."

The Court of Appeals seems to have followed this general rule in cases where the question under consideration has been the admissibility of evidence as to speed of an automobile. With respect to the duration of the observation, it has been held that an almost instantaneous observation will be sufficient to qualify the witness to testify as to the speed of the automobile, with the short duration going only to the weight of the evidence. *Jackson v. Leach,* 160 Md. 139, 152 Atl. 813 (1931). It was held in *Mulligan v. Pruitt,* 244 Md. 338, 344-45, 223 A. 2d 574 (1966) that a witness sitting on her front porch about 30 feet from the road who observed an automobile coming down the street toward her first at a distance of approximately 375 feet,

the observation continuing as the vehicle traversed the length of one-half a residential block and ending when the vehicle was still 100 feet away from her (see *Mulligan v. Pruitt, supra* at 341, 342) was not disqualified to testify as to the speed because of the short duration of the observation. See also the general statement in *People's Drug Stores v. Windham,* 178 Md. 172, 179, 12 A. 2d 525 (1940) that an estimate of speed "is but a mental impression formed instantly from the observation of conditions which may not be exactly reproduced and which ordinarily disappear instantly."

With respect to the relative positions of the witness and the moving automobile at the time of the observation it was stated *in dictum* in *Miller v. Graef,* 196 Md. 609, 78 A. 2d 220 (1951), that a witness was qualified to testify as to speed, 196 Md. at 617, although he was in the roadway in the path of the oncoming automobile, 196 Md. at 616. In *Mulligan v. Pruitt, supra,* the witness, who was 30 feet from the road observing an automobile which at no time during the observation was less than 100 feet away, was allowed to testify, although the angle at which she viewed the automobile was demonstrably small. And in *Lilly v. State,* 212 Md. 436, 129 A. 2d 839 (1957), a passenger on a bus saw the automobile which collided with the bus coming directly at it and testified as to the speed of the automobile. The Court of Appeals, citing *Miller v. Graef, supra,* said that "it is an accepted rule of evidence that a witness qualified by observation and experience may testify as to the speed of a moving automobile which he has observed . . .," and made no mention of the possibility of an objection being raised on the angle of observation. 212 Md. at 441, 444.

In the instant case the witness, Mrs. Kelly, observed the appellant's automobile first at a distance of 100 feet, that distance becoming progressively less as the appellant's automobile advanced toward her. She observed the appellant's vehicle at an angle of approximately 15 degrees and had a point of reference in the grass strip separating the northbound and southbound lanes of Walther Avenue. She had the appellant's vehicle under observation continuously except for the time during which she glanced at the automatic traffic signal. Under these facts we would not consider it error to admit Mrs. Kelly's testimony and

would consider that the circumstances surrounding the observation went only to the weight of the evidence thus adduced. See *Jackson v. Leach, supra;* Jones, *Evidence,* § 407 (5th ed.).[1]

## II and III—MOTION FOR JUDGMENT OF ACQUITTAL; SUFFICIENCY OF EVIDENCE

The appellant's first portion of his second contention, that the lower court erred when it failed to grant his Motion for Judgment of Acquittal at the close of the evidence offered by the State, is without merit since he (appellant) thereafter offered evidence on his own behalf, thereby withdrawing his motion. Maryland Rule 755 (b), *Gray v. State,* 4 Md. App. 175, 179, 241 A. 2d 909 (1968) ; *Brooks v. State,* 3 Md. App. 485, 511, 240 A. 2d 114 (1968) ; *Lucas v. State,* 2 Md. App. 590, 592, 235 A. 2d 780, 781 (1967).

In reviewing the lower court's denial of a Motion for Judgment of Acquittal made at the conclusion of the entire case, the review becomes a determination of the sufficiency of the evidence, *Gray v. State, supra; Brooks v. State, supra.* Therefore, appellant's urging that the lower court erred in not granting the renewed Motion for Judgment of Acquittal is redundant and merges with his third contention that the evidence was not sufficient to sustain the conviction. *Gray v. State, supra; Lucas v. State, supra.*

The applicable test as to the standard "in a grossly negligent manner" of Md. Code, Art. 27, § 388, as well as the cases discussing sufficiency of evidence in manslaughter by automobile prosecutions were discussed in *Montague v. State,* 3 Md. App. 66, 69-72, 237 A. 2d 816 (1968), and nothing would be gained by repetition of what was there said.

In the instant case there was evidence, in the form of Mrs. Kelly's testimony, that the appellant was driving at an excessive speed under the circumstances. Corroboration of this point can be found in the location of the vehicles after the accident, the damage to the vehicles, and the fatal injuries to the deceased. See *Lilly v. State, supra.* There was also evidence that the ap-

---

1. For additional general discussion of opinion testimony as to the speed of moving automobiles, see Annots. 70 A.L.R. 540 (1931); 94 A.L.R. 1190 (1935); 156 A.L.R. 382 (1945).

148

pellant failed to stop at a red automatic signal and that he did not reduce his speed as he entered the intersection. There was evidence also that the appellant had been drinking immediately prior to the accident, which can be considered in this type of prosecution, see *Clay v. State,* 211 Md. 577, 584, 128 A. 2d 634 (1957) ; *Montague v. State, supra.*

The test of sufficiency of the evidence in a non-jury case is "whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Montague v. State, supra* at 72, and cases there cited. We find that the evidence described supports a finding of gross negligence as defined in *Montague v. State, supra,* and the cases there cited dealing with manslaughter by automobile; and upon the record before us we cannot say that the trial court's finding was clearly erroneous. Maryland Rule 1086.

*Judgment affirmed.*